UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANDRA KASE,                                    Case No. 10-12926

        Plaintiff,                          Victoria A. Roberts
v.                                              United States District Judge

COMMISSIONER OF                                 Michael Hluchaniuk
SOCIAL SECURITY,                                United States Magistrate Judge

        Defendant.
_____/

**REPORT AND RECOMMENDATION
CROSS MOTIONS FOR SUMMARY JUDGMENT (Dkt. 8, 9)**

## I.   PROCEDURAL HISTORY

    A.   <u>Proceedings in this Court</u>

On July 25, 2010, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Victoria A.

Roberts referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of disability and

disability insurance benefits.  (Dkt. 2).  This matter is currently before the Court on

cross-motions for summary judgment.  (Dkt. 8, 9).

    B.   <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on April 12, 2005, alleging that she became

unable to work on April 15, 2003. (Dkt. 6, Tr. at 55-57). The claim was initially

disapproved by the Commissioner on June 10, 2006. (Dkt. 6, Tr. at 49). Plaintiff

requested a hearing and on October 15, 2008, plaintiff appeared with counsel

before Administrative Law Judge (ALJ) Henry Perez, Jr., who considered the case

*de novo*. In a decision dated December 18, 2008, the ALJ found that plaintiff was

not disabled. (Dkt. 6, Tr. at 18-30). Plaintiff requested a review of this decision on

December 31, 2008. (Dkt. 6, Tr. at 42-46). The ALJ's decision became the final

decision of the Commissioner when, after the review of additional exhibits[1] (AC-1-

3, Dkt. 6, Tr. at 480-494), the Appeals Council, on July 1, 2010, denied plaintiff's

request for review. (Dkt. 6, Tr. at 6-11); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d

541, 543-44 (6th Cir. 2004).

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was 58 years of age at the time of the most recent administrative

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

hearing.  (Dkt. 6, Tr. at 497-498).  Plaintiff was insured through December 31, 2009.  (Dkt. 6, Tr. at 21).  Plaintiff's relevant work history for the past 15 years included work as a receptionist, credential administrator, and head receptionist. (Dkt. 6, Tr. at 29).  In denying plaintiff's claims, defendant Commissioner considered bilateral shoulder injury, cervical neck injury, and carpal tunnel as possible bases of disability.   (Dkt. 6, Tr. 60).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since April 15, 2003.  (Dkt. 6, Tr. at 23).  At step two, the ALJ found that plaintiff's impairments of degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine; and degenerative disc disease of the thoracic spine were "severe" within the meaning of the second sequential step.  *Id*.  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 6, Tr. at 24).  At step four, the ALJ found that plaintiff could not perform her previous work as a receptionist. (Dkt. 6, Tr. at 29).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 6, Tr. at 29-30).

B.    Plaintiff's Claims of Error

Plaintiff finds fault with the ALJ's credibility analysis in several respects.

Report and Recommendation
Cross-Motions for Summary Judgment
*Kase v. Comm'r*; Case No. Case No. 10-12926

For example, the ALJ noted that plaintiff's gym membership as suggestive of greater capabilities than alleged. (Tr. 26). However, as documented by her physician, plaintiff was joining for the purpose of home therapy. (Tr. 201). Also, while plaintiff was doing well enough at one time for Dr. Perkins to allow a return to work, he demanded moderate restrictions and cessation of all pain medications. Further, Dr. Perkins' subsequent records show a worsening of the condition as evidenced by the second surgical procedure that was performed six months later. (Tr. 204-205).

The ALJ also discredited plaintiff's testimony as describing symptoms so extreme as to be implausible. (Tr. 25). However, according to plaintiff, that finding necessarily ignores the opinions of two neurosurgeons, Drs. Rapp and Friedman, two physiatrists, Drs. Gordon and Kneiser, as well as a pain specialist, Dr. Lininger, and a neurologist, Dr. Eilender. Moreover, the ALJ refused to consider plaintiff's limited daily activities as strong evidence of her disability because her statements could not be objectively verified. According to plaintiff, this reasoning is faulty and pain alone has been held to establish a disability for the purposes of the Act. Plaintiff further offers that the mountain of medical evidence that detailed six years of treatment with a variety of specialists, submitted in support of disability, is anything but "weak" as described by the ALJ. (Tr. 25).

Plaintiff also challenges the ALJ's comments about her work activity.

According to plaintiff, working six to eight hours, three days per week from March 2004 until September 2004, when plaintiff was improving should be lauded, not damned.  The February 6, 2008 functional capacity evaluation, (Tr. 377 - 397), requested by Dr. Kneiser, (Tr. 448), was also troubling to the ALJ.  He found support for his credibility findings in the inconsistent effort of plaintiff, as reported by the evaluator.  (Tr. 27).  Plaintiff points out that  a comparison between those observations, and the February 8, 2008 neurology report of Dr. Eilender, show much similarity in that plaintiff had extreme difficulty with her upper extremities. However, Dr. Eilender found disability in plaintiff's limitations, not sub-optimal effort.  Plaintiff argues that greater weight should have been given the findings and opinions of the medical specialist, and not the less credentialed occupational therapist.

Finally, plaintiff questions the ALJ's conclusion that omitting an employer from a work history report and failing to testify to that position at the hearing indicates a lack of reliability.  (Tr. 25).  Plaintiff submits that the ALJ's assertion is speculative and given the magnitude of the injury and its chronic nature, plaintiff's failure to testify to a specific, unskilled position is, at most, inconsequential.

C.     <u>Commissioner's Motion for Summary Judgment</u>

Ultimately, the ALJ gave greater weight to the opinions of two treating specialists, Dr. Lininger and Dr. Kneiser.  (Tr. 28).  As the ALJ summarized, Dr. Kneiser had specifically opined that plaintiff was capable of sedentary work with "additional limitations."  (Tr. 27-28).  The ALJ credited both Dr. Lininger's and Dr. Kneiser's notes raising doubts about plaintiff's credibility due to, among other issues, her "strong disease conviction" and "pre-occup[ation] with pain and her posture."  (Tr. 27).  The ALJ also relied on the report from the occupational therapist who performed a functional capacity evaluation for Dr. Kneiser.  (Tr. 27-28, citing, Tr. 377).  The occupational therapist found plaintiff capable of sedentary work with additional limitations, but cited "multiple inconsistencies" and "inconsistent effort," meaning that those results were "not thought to be an accurate indication of her current maximum abilities."  (Tr. 377).

Plaintiff argues that the ALJ should have given greater weight to Dr. Eilander's consultative opinion that plaintiff was "disabled."  According to the Commissioner, the ALJ correctly found that an opinion that plaintiff was "disabled" from all work is an issue ultimately reserved to the Commissioner, and entitled to no particular weight.  20 C.F.R. § 404.1527(e)(1).  Thus, as a matter of law, Dr. Eilander's statement that plaintiff was not capable of working was not a medical opinion and, according to the Commissioner, the ALJ did not err in giving

this statement no weight.  Similarly, plaintiff's argument that the ALJ should have given less weight to the occupational therapist's findings misstates the legal standard because an ALJ may credit any medical opinion "[r]egardless of its source," provided that it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2); *see also* Soc. Sec. Ruling 96-2p, 1996 WL 374188; 20 C.F.R. § 404.1527(d)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that opinion.").  Plaintiff's perfunctory statement does not explain how plaintiff believes the ALJ erred, or attempt to engage or refute the occupational therapist's conclusions.  According to the Commissioner, the ALJ gave good reasons for the weight he gave to medical opinions from Dr. Kneiser and the occupational therapist who evaluated Plaintiff at Dr. Kneiser's request.  (Tr. 27-28).

The Commissioner also argues that the ALJ reasonably concluded that plaintiff's allegations about her impairments were less than fully credible, and offered substantial evidence in support.  According to the Commissioner, plaintiff does not attempt to refute that the ALJ offered substantial evidence to support his reasons.  For instance, plaintiff observes that the ALJ cited her ability to work in 2004; the significant inconsistencies found by the occupational therapist; the

opinions of two specialists, treating physicians, Dr. Kneiser and Dr. Lininger, that her allegations were not fully credible; and her omission of work history from her application.  Plaintiff does not attempt to refute this evidence, but instead contends variably that she would have found the evidence that she had sought treatment "consistently" supported her position and was "anything but 'weak'," would have given greater weight to consultative opinions, and would have ignored the questions about credibility that her inconsistent work history reports raised. According to the Commissioner, however, the mere presence of medical conditions or symptoms does not indicate the severity of any resulting impairment and each of these arguments fails to engage or refute the ALJ's conclusions, and instead asks the Court to re-weigh the factual evidence and conclude that it supports plaintiff's allegations of disability.  The Commissioner urges the Court to conclude that the ALJ's credibility decision was well-reasoned, legally sound, and supported by substantial evidence, and the Court should affirm it.

According to the Commissioner, plaintiff claims incorrectly that the ALJ "refused to consider [her] limited daily activities as strong evidence of her disability because her statements could not be objectively verified" and states that her subjective allegations of pain "alone" could establish disability.  This misstates both the ALJ's conclusions and the applicable law.  In general, the extent to which an individual's statements about symptoms can be relied upon as probative

evidence in determining whether the individual is disabled depends on the credibility of the statements."  Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *4. The regulations and case law require the ALJ to articulate specific reasons for discounting a claimant's testimony.  As long as the ALJ articulates a credibility determination that finds a "reasonable basis" in the record, the Court will give "considerable deference" to the ALJ's finding.  As plaintiff's brief itself acknowledges, the ALJ cited her ability to work in 2004; the significant inconsistencies found by the occupational therapist; the opinions of two specialist, treating physicians, Dr. Kneiser and Dr. Lininger, that her allegations were not fully credible; and her omission of work history from her application.  The ALJ also noted plaintiff's non-disclosure to Dr. Perkins that she had returned to work, her decision to twice forgo surgery recommended by Dr. Rapp, her decisions not to take pain medication, and her reports of relief from treatment.  (Tr. 26-28). Medical evidence, daily activities including work, medication (or the lack thereof), the decision to forgo treatment, and the results of specific treatments are all among the types of evidence that an ALJ may properly consider under the regulations.  20 C.F.R. § 404.1529(c)(2)-(3).

## III.    ANALYSIS AND CONCLUSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v.*

Report and Recommendation
Cross-Motions for Summary Judgment
*Kase v. Comm'r*; Case No. Case No. 10-12926

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record

only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001). When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight. *Wyatt v. Sec'y of

Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of

appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either

the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

Report and Recommendation
Cross-Motions for Summary Judgment
*Kase v. Comm'r*; Case No. Case No. 10-12926

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

   C.    Analysis

While the ALJ specifically and expressly gave controlling weight to the opinions of Dr. Kneiser and Dr. Lininger, at the same time, he undercut their opinions by concluding that Dr. Kneiser failed to put specific limitations on plaintiff and that Dr. Lininger's conclusion that plaintiff had a "strong disease conviction" undermined her credibility. When evaluating the opinions of treating

physicians, the ALJ must also consider, under some circumstances, contacting the treating source for clarification:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

SSR 96-5p, 1996 WL 374183, *6; *see also* 20 C.F.R. § 404.1512(e); *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000) (The ALJ has a duty to investigate the facts and develop the arguments both for and against granting benefits.).

The ALJ gave considerable weight to the functional capacity evaluation performed by an occupational therapist at Dr. Kneiser's request, finding the results to a strong indicator that plaintiff's credibility was suspect. However, Dr. Kneiser's notes from immediately after that examination are not in the record.[2] Further, when Dr. Kneiser opined (*after* the FCE) that plaintiff was capable of sedentary work with "significant limitations to be able to tolerate that type of activity at this point." (Tr. 449). The ALJ dismissed Dr. Kneiser's conclusion because the limitations were not specific and because of plaintiff's "preoccupation" with her pain. (Tr. 28, n. 1). This is precisely the circumstance where re-

---

[2] There is evidence in the record that plaintiff was supposed to see Dr. Kneiser in March 2008, the month following the FCE. However, there are no notes from this office visit and thus, it is not clear whether this visit occurred.

contacting the treating physician is critical to proper assessment of plaintiff's

functional capacity, particularly given the controlling weight the ALJ expressly

accorded Dr. Kneiser's opinions.[3]  Since the one-time FCE results showed that

plaintiff *may* have given inconsistent efforts, in the view of the undersigned it was

far more important to the proper assessment of plaintiff's limitations to find out the

opinions of Dr. Kneiser regarding the FCE results, given that she treated plaintiff

long before and long after the FCE was performed.  It is not clear from the FCE

report whether and to what extent the occupational therapist was able to assess

whether plaintiff's efforts were limited by painful muscle spasms (as plaintiff

stated during the examination) versus purposeful inconsistent effort.  For example,

the occupational therapist claimed to have palpated plaintiff's shoulder and back

and found no evidence of any muscle spasms, but a mere two days later, multiple

spasms were noted throughout her trapezius, semispinalis, splenius, and rhomboids

by Dr. Leuchter.  (Tr. 460).  In addition, during virtually every examination and

treatment plaintiff underwent, multiple muscle spasms were noted.  (Tr. 197, 228,

232, 234, 235, 294, 297, 301, 303, 306, 319, 375).

---

[3]  Notably, although the undersigned cannot consider the exhibits provided
to the Appeals Council, Dr. Kneiser did, in fact, offer more specific opinions
regarding plaintiff's functional capacity in February 2009, just two months after
the ALJ issued his decision (and long before plaintiff's insured status expired),
which seemingly would have lead the ALJ to conclude that plaintiff was disabled
under the hypothetical posed to the vocational expert at the hearing.  (Tr. 481).

The undersigned is also troubled by the ALJ's assessment of plaintiff's pain based on her treating physician statements that she was "preoccupied" with her pain and had a "strong disease conviction." An "ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Meece v. Barnhart*, 192 Fed.Appx. 456, 465 (6th Cir. 2006), citing, *McCain v. Dir., Office of Workers Comp. Programs*, 58 Fed.Appx. 184, 193 (6th Cir. 2003) (citation omitted); *see also Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor."). While these statements from Dr. Kneiser and Dr. Lininger are surely related to the psychological aspects of plaintiff's pain, nothing in their records or in their opinions (which the ALJ found controlling) suggest that plaintiff was malingering. As the Seventh Circuit has noted, "[i]f pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits." *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004). Here, there is overwhelming evidence supporting the conclusion that plaintiff's pain is certainly not entirely psychological, given the recommendation of a fusion of C3-C7.[4] Moreover, the undersigned finds the

---

[4] Even if her pain were entirely psychological, its potentially disabling effects are no less real. Indeed, where the claimant has a somatoform disorder, an ALJ may not reject a claimant's subjective complaints of pain simply because they

ALJ's criticism of plaintiff's psychological treatment being "confined to 2008,

which suggest that the treatment sought was primarily in order to generate

evidence for this application and appeal, rather than in a genuine attempt to obtain

relief from the allegedly disabling symptoms" to be rather puzzling.  When Dr.

Lininger noted plaintiff's "strong disease conviction" in February 2007, he also

indicated that she was seeing a psychologist at that time and that she should

continue to do so.  (Tr. 410).  Thus, while the ALJ's credibility determination is

entitled to significant deference, the undersigned concludes that it would be simply

impossible for the ALJ to re-evaluate the treating physician evidence without also

re-evaluating plaintiff's pain and other credibility issues.  While this record may

not justify a remand for an award of benefits, *see Faucher v. Sec'y of Health and*

*Human Serv.*, 17 F.3d 171, 176 (6th Cir. 1994),[5] a remand is nonetheless required.

    D.    <u>Conclusion</u>

      After review of the record, the undersigned concludes that the decision of

---

are not supported by the objective medical evidence.  *Easter v. Bowen*, 867 F.2d
1128, 1130-31 (8th Cir. 1989).  This is because a somatoform disorder "causes [a
claimant] to exaggerate her physical problems in her mind beyond what the
medical data indicate."  *Id.* at 1130.

   [5] "If a court determines that substantial evidence does not support the
Secretary's decision, the court can reverse the decision and immediately award
benefits only if all essential factual issues have been resolved and the record
adequately establishes a plaintiff's entitlement to benefits."  *Faucher*, 17 F.3d at
176.

the ALJ, which ultimately became the final decision of the Commissioner, is not

within that "zone of choice within which decisionmakers may go either way

without interference from the courts," *Felisky*, 35 F.3d at 1035, and the decision is

not supported by substantial evidence, justifying a remand and investigation

consistent with this Report and Recommendation.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

for summary judgment be **DENIED**, that the findings of the Commissioner be

**REVERSED**, and that this matter be **REMANDED** for further review and

investigation consistent with this report and recommendation.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health

and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: June 29, 2011                                    s/Michael Hluchaniuk
                                                       Michael Hluchaniuk
                                                       United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

      I certify that on <u>June 29, 2011</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Marc J. Littman, Kenneth L. Shaitelman, AUSA, and the Commissioner of Social Security</u>.

s/Tammy Hallwood
Case Manager
(810) 341-7850
tammy_hallwood@mied.uscourts.gov
